UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JERRY BORSH,

    Plaintiff,

v.

SALIENT CRGT, INC.,

    Defendant.

:

:

Case No. 2:20-cv-2727
Judge Sarah D. Morrison
Chief Magistrate Judge Elizabeth
A. Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Salient CRGT, Inc.'s Motion to Enforce Settlement Agreement (Mot. to Enforce, ECF No. 6). Plaintiff Jerry Borsh has filed a response in opposition including a motion for attorney fees (Resp., ECF No. 7), to which Salient CRGT has replied (including its own motion for attorney fees) (Reply, ECF No. 8). Salient CRGT has since filed a motion to stay discovery pending resolution of the Motion to Enforce Settlement Agreement. (ECF No. 15.)

For the reasons set forth below, Salient CRGT's Motion to Enforce Settlement Agreement is **DENIED**. Further, Mr. Borsh's motion for attorney fees is **GRANTED** and Salient CRGT's motion for attorney fees is **DENIED**. Finally, Salient CRGT's motion to stay discovery is **DENIED** as moot.

### I.  BACKGROUND

On July 25, 2019, Mr. Borsh filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Salient CRGT

1

discriminated against him, on the basis of his age, by refusing to hire him. (Charge, ECF No. 7-2. *See also* Borsh Decl., ¶¶ 3–4, ECF No. 7-1.) Elmeaco Mallory was assigned as EEOC investigator responsible for Mr. Borsh's Charge. (*See* ECF No. 6-2, p. 8) Investigator Mallory facilitated discussions and negotiations between Mr. Borsh and Salient CRGT, through its counsel Shannon Patton. (*See* ECF No. 6-2, *generally*. *See also* Patton Decl., ¶ 5, ECF No. 6-2.) Mr. Borsh was unrepresented by counsel during these negotiations. (Borsh Decl., ¶ 5.)

Negotiations continued through the months of October, November, and December of 2019. (*See* ECF No. 6-2, *generally*.) On November 1, 2019, Mr. Borsh requested $12,000 to resolve the Charge. (Mallory Nov. 1, 2019 Email, ECF No. 6-2, PAGEID # 41–42.) On December 19, 2019, Attorney Patton represented to Investigator Mallory that Salient CRGT would "agree to Mr. Borsh's demand of $12,000 in exchange for dismissal of the charge and a full release I will prepare." (Patton Dec. 19, 2019 Email, ECF No. 6-2, PAGEID # 41.) On January 6, 2020, Attorney Patton called Mr. Borsh directly to "advise[] that [Salient CRGT] . . . would agree to settle for [his] initial demand of $12,000." (Patton Decl., ¶ 8.) Mr. Borsh "accepted [Salient CRGT's] $12,000 offer." (*Id.*, ¶ 9.) The following day, Investigator Mallory emailed Attorney Patton, stating: "[Mr. Borsh] will accept the offer of $12 thousand dollars. I will draft the settlement offer as soon as possible." (Mallory Jan. 7, 2020 Email, ECF No. 6-2, PAGEID # 40.) Attorney Patton responded, noting that she was "preparing our own agreement, as well, which I will send to [Mr. Borsh] directly." (Patton Jan. 7, 2020 Email, ECF No. 6-2, PAGEID #

2

40.) Mr. Borsh alleges, in a sworn declaration, that "[t]he only term the parties discussed [throughout the negotiations] was the monetary term." (Borsh Decl., ¶ 6.)

On January 21, 2020, Attorney Patton emailed Mr. Borsh "a draft settlement agreement." (Patton Decl., ¶ 11.) Attorney Patton states in the cover email:

> Attached for your review is a draft of the settlement agreement I prepared to resolve your EEOC claim against my client, Salient CRGT. Please review and, if it is acceptable, return to me. If you (or an attorney representing you) have any questions or comments, please let me know.

(Patton Jan. 21, 2020 Email, ECF No. 6-2, PAGEID # 61.) The referenced agreement is seven pages long, with a preamble, three recitals, and twenty-two substantive sections. (*See* Mot. to Enforce, Ex. C, ECF No. 6-2, PAGEID # 49–55.)

Section 1 of the draft agreement provides, in part, as follows:

> In consideration for Borsh's agreement to all of the terms, conditions and promises in this Agreement, including, but not limited to the general release set forth in Paragraph 6 of this Agreement, the Company agrees to pay to Borsh the total gross amount of Twelve Thousand Dollars and Zero Cents ($12,000.00), inclusive of any and all costs and attorneys' fees incurred (the "Settlement Payment"), in connection with Borsh's claims asserted in the Charge.

Section 4 requires Mr. Borsh to dismiss the Charge. Section 6 requires Mr. Borsh to

> release[] and forever discharge[] Salient [CRGT] and each of its divisions, affiliates, parents, shareholders, investors, subsidiaries and operating companies, and officers, directors, current and former employees, agents and affiliates of each of them (collectively, the "Released Parties"), from any and all causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, including but not limited to claims for injury and sickness, and claims for attorneys' fees, whether known or unknown, asserted or unasserted, which Borsh ever had, now has or which he or his spouse, heirs, executors, administrators, successors, representatives or assigns may have (collectively, the "Released Claims").

Section 8 further requires Mr. Borsh to "agree[] not to file or initiate a lawsuit in any court or initiate any subsequent arbitration proceeding asserting any of the Released Claims against any of the Released Parties." Section 9 provides that Mr. "Borsh shall not seek employment with Salient [CRGT] or any of the Released Parties." Section 10 provides for "strict" confidentiality of the agreement's existence and terms and Section 11 further provides that "no publicity of any kind . . . will be issued in connection with" the agreement. Section 12 requires Mr. Borsh to refrain from disparaging Salient CRGT "and each of its divisions, affiliates, parents, subsidiaries, operating companies and employees, including their business, products, or services." Finally, Sections 19 and 20 provide Mr. Borsh a twenty-one-day period to consider the agreement and a seven-day period following execution to revoke his acceptance of it.

Shortly thereafter, Investigator Mallory delivered to the parties the EEOC's draft settlement agreement. (Mot. to Enforce, Ex. B, ECF No. 6-2, PAGEID # 47–48.) This agreement provides, on a single page and very simply, that Mr. Borsh "agrees not to institute a lawsuit with respect to the" Charge in exchange for "the sum of Twelve Thousand Dollars[.]"

Mr. Borsh did not immediately respond to Attorney Patton or Investigator Mallory. (*See* Patton Decl., ¶ 13.) Attorney Patton followed-up by email on January 29, 2020, stating, in part: "Again, please review and let me know if you have any questions. Assuming the agreement is acceptable, you can return executed copies to me." (Patton Jan. 29, 2020 Email, ECF No. 6-2, PAGEID # 56–57.) After more than

4

two weeks with no response from Mr. Borsh, Attorney Patton emailed on February 17, 2020, this time stating, in part: "Please confirm that you received the settlement agreement I sent and if you have any questions. Assuming it's acceptable, please return to me." (Patton Feb. 17, 2020 Email, ECF No. 6-2, PAGEID # 56.) Mr. Borsh then responded, stating simply: "Yes, I did receive the settlement offer document." (Patton Feb. 17, 2020 Email, ECF No. 6-2, PAGEID # 56.)

On February 20, 2020, Mr. Borsh responded to the substance of Salient CRGT's draft settlement agreement:

> The "12" that is referenced was intended to be 12 weeks of salary @$125k, not $12k total. That in addition to the introduction of an NDA with a gag unfortunately sours this arrangement and I am unable to sign this document. . . . $125k annual is $2,400 a week and that times 12 weeks is [$]28,800 which is close enough to the lost earnings to enable me to sign the NDA with it's [sic] terms and pretend that none of this ever happened.

(Borsh Feb. 20, 2020 Email, ECF No. 6-2, PAGEID # 60–61.)

The following day, Attorney Patton responded, expressing disappointment and stating that the $12,000 figure had been "crystal clear." (Patton Feb. 21, 2020 Email to Borsh, ECF No. 7-5, PAGEID # 88.) She further stated, "I'm not sure what you mean by 'NDA', but non-disparagement and confidentiality are typically included in these types of agreements." She closed the email as follows:

> Salient continues to deny any wrongdoing but remains willing to resolve this matter amicably, but it is not willing to meet your revised demand. The offer of $12,000 under the terms of the agreement as written remains on the table until February 28, 2020. Thereafter, the offer will be revoked.

Attorney Patton also emailed Investigator Mallory, alerting him to Mr. Borsh's response. (Patton Feb. 21, 2020 Email to Mallory, ECF No. 6-2, PAGEID #

5

64.) Attorney Patton asked Investigator Mallory to call her, in hopes that the investigator "might help salvage the deal." She then stated: "I know that we cannot force Mr. Borsh to sign, but I am hopeful that you can remind him that $12,000 is imminently [sic] fair . . ."

Mr. Borsh never returned an executed agreement to either Attorney Patton or Investigator Mallory. (Patton Decl., ¶ 13.) Instead, he filed his Complaint on May 28, 2020, alleging age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. and Ohio Revised Code Chapter 4112, and intentional infliction of emotional distress. (ECF No. 1.)

## II.  DISCUSSION

Salient CRGT now asks the Court to enforce a settlement agreement it maintains was entered into orally on January 6, 2020, and which it represents is memorialized in the draft agreement sent to Mr. Borsh on January 21, 2020. (Mot. to Enforce.) Mr. Borsh opposes the motion, arguing that the parties never entered into a binding settlement agreement, because a meeting of the minds did not exist as to material terms including, *inter alia*, the confidentiality, non-publicity, and non-disparagement provisions.[1] (Resp.) Upon review of the parties' submissions, and absent a request by the parties, the Court determines an evidentiary hearing on the Motion to Enforce Settlement Agreement is not necessary.

---

[1] Mr. Borsh also argues that requiring him to sign Salient CRGT's draft settlement agreement would run afoul of the Older Workers' Benefit Protection Act's notice and revocation period requirements. Because the Court concludes that the parties did not reach an enforceable agreement, it does not address this argument.

6

Settlement agreements are a type of contract, enforceable by either party. *Cont'l W. Condo. Unit Owners Assoc. v. Howard E. Ferguson, Inc.*, 660 N.E.2d 413, 432 (Ohio 1996) (citing, *inter alia*, *Spercel v. Sterling Indus.*, 285 N.E.2d 324, 325 (Ohio 1972)). Generally, a district court has the authority and discretion to rule on a motion to enforce an agreement in settlement of litigation pending before it. *See, e.g., Newman v. Gaudet*, No. 1:06-cv-614, 2007 WL 9734375, at *2 (S.D. Ohio Feb. 1, 2007) (citing *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). However, "[w]here parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties." *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997). *See also Brockwell v. Beachwood City Sch. Dist.*, No. 1:04-cv-1155, 2008 WL 918266, at *8 (N.D. Ohio Mar. 31, 2008). Thus, "[b]efore enforcing a settlement, a district court must conclude that an agreement has been reached on all material terms." *Newman*, 2007 WL 9734375, at *2 (citation omitted). To do so, the court looks to state contract law. In Ohio, a valid contract requires "a meeting of the minds as well as an offer and acceptance.' *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) (quoting *Rulli*, 683 N.E.2d at 338 (syllabus)). Although a settlement agreement need not be reduced to writing, "'the terms of the agreement must be reasonably certain and clear.'" *Id.*, (quoting *Rulli,* 683 N.E.2d at 339).

The record here makes quite clear that there is no settlement agreement to enforce. Salient CRGT and Mr. Borsh had very different understandings about the material terms and conditions that would accompany a $12,000 payment. In other

7

words, there was no "meeting of the minds." Mr. Borsh made clear in his response to the draft agreement that he would require more in order to agree to a "gag." There is no evidence or allegation that any confidentiality, non-disparagement, or non-publicity provisions were ever discussed among the parties prior to the transmission of Salient CRGT's draft agreement to Mr. Borsh, and the Court finds that these types of provisions are material terms to a settlement. *See Lakin v. Bloomin' Brands, Inc.*, No. 17-cv-13088, 2019 WL 6463716, at *4 (E.D. Mich. Dec. 2, 2019).

As a Shareholder at a law firm peddling "Labor & Employment Law Solutions" (*see, e.g.*, Patton Feb. 21, 2020 Email to Borsh), Attorney Patton may find non-disparagement and confidentiality provisions "typical" in settlement agreements—but such typicality is by no means universal and would certainly not be common knowledge to Mr. Borsh. That these terms were not subject to any negotiation is further supported by the fact that the draft settlement agreement prepared by Investigator Mallory did not reflect any of these provisions. It is, thus, apparent that no agreement was reached on all material terms of the proposed settlement.

Salient CRGT's argument in favor of a contrary conclusion is unavailing. It cites to no case law in which a court has enforced a settlement agreement on analogous facts—*i.e.*, that the agreement was not reduced to writing, was not made in open court, and the material terms of which are in dispute. *Spercel*, 285 N.E.2d 324 (Ohio 1972) (oral settlement agreement entered into in the presence of the court); *Smith*, 434 F. App'x 454 (6th Cir. 2011) (same); *Re/Max Int'l, Inc.*, 271 F.3d

8

366 (same); *Cont'l W. Condo. Unit Owers Ass'n*, 660 N.E.2d 431 (Ohio 1996) (written settlement agreement); *Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988) (same); *Mack v. Polson Rubber Co.*, 470 N.E.2d 902 (Ohio 1984) (parties dispute neither the existence nor terms of an agreement); *Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445 (6th Cir. 2007) (same); *Newman*, 2007 WL 9734375 (declining to enforce an oral settlement agreement when evidence did not support a meeting of the minds on all material terms); *Noroski v. Fallet*, 442 N.E.2d 1302 (Ohio 1982) (same); *McDermott v. Advanstar Communications, Inc.*, No. 1:98-cv-515, 2007 WL 4404030 (N.D. Ohio Dec. 12, 2007) (same); *Rulli*, 683 N.E.2d 337 (Ohio 1997) (reversing order enforcing settlement agreement that was read into the record when the parties later disputed its meaning); *Kaple v. Benchmark Materials*, No. 13-03-60, 2004 WL 1146571 (Ohio Ct. App. May 24, 2004) (reversing order enforcing settlement agreement where trial court altered agreement's terms).

Rather, the record makes quite clear that, prior to crafting the Motion now before the Court, <u>neither</u> party believed an agreement had been reached. Attorney Patton repeatedly invited Mr. Borsh to make comments on and ask questions about the draft agreement, or to find the agreement unacceptable. When Mr. Borsh objected to her draft, Attorney Patton represented to Mr. Borsh that the draft agreement constituted an "offer," which Salient CRGT intended to revoke on February 28, 2020. She then pleaded with Investigator Mallory to "salvage the deal," conceding that she had no power to "force" Mr. Borsh to sign the agreement. For its part, there is no evidence or allegation that Salient CRGT issued any

9

payment to Mr. Borsh or otherwise attempted to perform under the agreement, as the company understood its terms. All of this leads the Court to the unfortunate conclusion that the instant Motion was filed in bad faith and constitutes sanctionable conduct. *Smith*, 434 F. App'x at 468.

### III.     CONCLUSION

Salient CRGT asks the Court to enforce a settlement agreement that, plainly, does not exist. Such request constitutes an act of bad faith on the part of Salient CRGT. As a result, Salient CRGT's Motion is **DENIED**. Mr. Borsh's motion for attorney fees expended in responding to the Motion is **GRANTED**. Salient CRGT's motion for attorney fees is **DENIED**. Finally, Salient CRGT's Motion to Stay Discovery is **DENIED** as moot.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**